# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Jean and David Coleman** | : | |
| **Guardians, and** | : | |
| | : | |
| **RODNEY JONES,** | : | CIVIL ACTION NO. |
| **Student** | : | |
| vs. | : | |
| | : | |
| **POTTSTOWN** | : | |
| **SCHOOL DISTRICT** | : | |
| **Defendant** | : | |

## COMPLAINT

**I.   INTRODUCTION**

1. This is an action filed pursuant to Part B of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 - 1419 ("IDEA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act"), and the American with Disabilities Act (ADA), 42 U.S.C. Sec. 12131, et. seq. for the failure of the Pottstown School District ("School District") to comply with its requirements under these provisions to provide a student with disabilities an appropriate education in the least restrictive environment that would meet his needs.

2. The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. (hereinafter the "IDEA" or the "Act") and its implementing regulations, 34 C.F.R. Part 300 *et seq.* require states and local school districts that receive funds under the Act to provide school

1

age residents who have disabilities with a "free appropriate public education," ("FAPE") comprised of special education and related services. *See* 20 U.S.C. § 1401(a); 34 C.F.R. § 300.26(b) (3).

3. Section 504 of the Rehabilitation Act also requires that students with disabilities be provided FAPE. In addition, Section 504 prohibits the exclusion of, or discrimination against, any otherwise qualified individual with a disability by federal fund recipients. Failure to provide accommodations and supplemental services constitutes discrimination for purposes of Section 504 of the Rehabilitation Act.

4. Plaintiffs have exhausted their claims through the administrative process in which they sought special education services for R.J. Plaintiffs filed a Due Process Notice of Complaint and Amended Due Process Notice of Complaint. Plaintiff's Amended Notice of Complaint was dismissed without a hearing by Hearing Officer Deborah DeLauro.

5. The age of majority is reached in Pennsylvania when the individual reaches 21 years of age. PA does not transfer rights at the age of majority to any student; therefore, rights under IDEA are not transferred to students with disabilities. IDEA-B July 1, 2004.

## II.     The Parties

6. At all times relevant to the history related in this complaint, R.J. ("Plaintiffs") was a student enrolled at Pottstown High School, Pennsylvania. His date of birth is 04/23/1991.

7.      At all times relevant to the claims in this complaint, R.J. lived within the Pottstown School District with his legal guardians, Jean and David Coleman, and their adult son, Michael Coleman.

8.      Jean and David Coleman collaborated with their son, Michael Coleman in matters of R.J.'s education and welfare.  With respect to R.J.'s academic progress, Michael Coleman was the principal actor and main communicator with the Pottstown School District.

9.      Pottstown High School has its principal place of business in Pottstown, PA and is an agent, subsidiary or part of the Pottstown School District ("School District").  At all times relevant to this action, the District received Federal financial assistance for the implementation and provision of programs and services to meet the needs of students with disabilities located within in its city limits.  As the local education agency ("LEA") within the meaning of the IDEA, the District is responsible for providing a free appropriate public education ("FAPE") for eligible children within its jurisdiction.

## III.   Jurisdiction and Venue

10.     This action is brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1415 et. seq., and the American with Disabilities Act, 988.

11.     The Court's subject matter jurisdiction is authorized under: 20 U.S.C. § 1415, 28 U.S.C. §§ 1331, and 1343; 29 U.S.C. § 794(a); American with Disabilities Act, 42 U.S.C. Sec. 12131, et. seq.

12.     Venue is appropriate under 28 U.S.C. §1391(b).

## IV.     History

**The relevant factual and procedural history is as follows:**

13.     Before entering the Pottstown School District in Pennsylvania, R.J. resided in Baltimore, Maryland.

14.     While living in Baltimore, R.J. was subjected daily to societal violence, family strife and other negative influences.  As a young child, R.J. witnessed his brother being killed. When he was 8 years old, R.J. suffered a traumatic head injury from being hit in the head with a lead pipe.

15.     R.J. was not making satisfactory academic progress in the Baltimore public school system.  R.J. underwent multiple evaluations and testing which revealed that he suffered from neurologically-based specific learning disabilities in basic reading skills, listening comprehension, written expression, reading comprehension, math calculation, and mathematical reasoning, along with a diagnosis of a Traumatic Brain Injury (TBI).

16.     As a result, R.J. was placed in a private school for students with specific learning disabilities in reading.

17.     In order to free R.J. from his dangerous and negative environment in Baltimore, Jean Coleman and David Coleman obtained legal custody of R.J. on July 5, 2006.  *See*, **Exhibit 1: Order from the Circuit Court for Baltimore City**.  R.J. was moved to Pottstown, PA with the Colemans.

18.     R. J. entered the Pottstown School District in 2006.  Plaintiffs provided the School District with substantial documentation and other information regarding R.J.'s status and needs.  The School District indicated that it was equipped and willing to address R.J.'s needs, and accepted R.J. as a student.

19.     School District records show that it never evaluated R.J., but elected instead to rely on the private evaluation records from 2005, which Plaintiff had provided to the School District.

20.     R.J. performed poorly in both the 2006-2007, 2007-2008 school years. Eventually, R.J. encountered disciplinary problems.  However, no Functional Behavioral Assessment was performed by the School District.

21.     Concerned about R.J.'s lack of academic progress, his changes in behavior at school, and their dissatisfaction with the School District's Individualized Educational Plan ("IEP") the Colemans requested that R.J. attend the Lindamood-Bell (LMB) learning center

n Bryn Mawr, Pennsylvania for direct reading and math instruction at the School District's expense.

22. The School District denied Plaintiff's request though that had documented it in its IEP meeting notes. No Notice Of Recommended Educational Placement/ Prior Written Notice ("NOREP/PWN") was ever sent to the family giving reasons why the School District refused to place R.J. at LMB, nor were Plaintiffs sent "Procedural Safeguards".

23. At the beginning of the 2008-2009 school year, the Plaintiffs placed R.J. at LMB. The School District responded by un-enrolling R.J. from the district. The School District never conducted an evaluation of R.J.

24. In January, 2009 Plaintiffs met with the School District to discuss reimbursement for services provided at LMB for R.J., documenting the meaningful progress R.J. had made in the program a LMB.

25. The School District informed the Plaintiffs that R.J. had been un-enrolled in the School District, and that in order to consider reimbursement for LMB, R.J. would have to be re-enrolled in the School District, and an Evaluation would have to be performed. At the meeting the School District suggested that an Independent Evaluator be used for the Evaluation, and the Plaintiffs agreed.

26. The Plaintiffs did re-enroll R.J. in the Pottstown School District and a new IEP meeting was held. When the Plaintiffs found an Independent Evaluator, the School District refused to pay for the Evaluation as previously agreed to.

27. On May 13, 2009 Plaintiffs filed a Notice of Complaint for Due Process on behalf of R.J. by his guardians Jean and David Coleman as "parents".

28. The Complaint alleged procedural and substantive violations resulting in deprivation of a Free and Appropriate Education (FAPE) for the 2006-2007 and 2007-2008 school years, along with lack of appropriate services and lack of a transition plan for the above school years. Plaintiff sought, *inter alia*, tuition reimbursement for services that R.J. received at Lindamood Bell and compensatory education.

29. A hearing was scheduled for June 23, 2009 before hearing special Education Hearing Officer Deborah G. DeLauro.

30. The School District filed a Motion to Limit and Partial Motion to Dismiss on June 2, 2009, as well as a Motion to Dismiss Due Process Complaint Due to Lack of Standing on June 8, 2009.

31. On June 10, 2009, Plaintiff filed an Amended Complaint listing R.J. in his own behalf and Michael Coleman as his assignee, alleging the same procedural and substantive violations resulting in a denial of FAPE and seeking tuition reimbursement and compensatory education from the School District.

32. On June 12, 2009, the School District moved for partial dismissal of the Amended Due Process Complaint and also moved to "limit" the Due Process complaint. The School District essentially asserted that Jean and David Coleman lacked standing as "parents"

because R.J. had, on April 23, 2009 reached age 18 (the age of majority in Maryland).  The School District alleged that Michael Coleman was a third party which also lacking standing.

33.     On June 18, 2009 the Hearing Officer issued a decision essentially agreeing with the School District and dismissing the Amended Notice of Complaint without a hearing.  ***See,*** **Exhibit 2: Hearing Officer Correspondence #2**.  Specifically, the Hearing Officer made the following findings:

1. On June 10, 2009, Student and his assignee, Michael Coleman filed an Amended Complaint alleging procedural and substantive errors resulting in a denial of FAPE and proposing as a resolution, tuition reimbursement and compensatory education from the School District.

2. On June 12, 2009, the School District filed a Motion to Dismiss the Amended Complaint due to lack of standing, noting initially that Jean and David Coleman are not Student's adoptive parents and Student's natural mother has not been striped of any rights as a parent; and further noting that the filing party had not provided a copy of an Assignment of Rights to Michael Coleman, the son of Jean and David Coleman.

3. The School District contends that since Student has reached the age of majority on April 23, 2009, not only do the Coleman's his former guardians lack standing, but [so] does Michael Coleman, Student's alleged assignee.

4. I agree. Under the Individuals with Disabilities Education Act (hereinafter "IDEA") only children with disabilities and their parents have the right to bring a complaint for due process. 20 U.S.C. §1415(a) and §1415(b)(6) The statute defines "parent" as follows:

    (A) a natural, adoptive, or foster parent of a child (unless a foster parent is prohibited by State law from serving as a parent);
    (B) a guardian (but not the State if the child is a ward of the State);
    (C) an individual acting in the place of a natural or adoptive parent (including a , stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare; or
    (D) except as used in sections 615(b)(2) and 639(a)(5) [20 U.S.C. §§1415(b)(2) and 1439(a)(5)], an individual assigned under either of those sections to be a surrogate parent. 20 U.S.C. §1401(23).

5. The School District correctly points out that the 2006 regulations specify that the biological or adoptive parents are presumed to be parents unless they do not have legal authority to make educational decisions for the child. 34 CFR § 300.30(b)(1)

*6. The School District also notes that the regulations provide that this presumption may be overcome when a judicial decree or order identifies someone else in the list above to act as the parent of a child or make educational decisions on behalf of the child. 34 CFR §300.30(b)(2).*

*7. The School District contends that since under IDEA the question of whether a person meets the definitional criteria of "parent" is a matter of state law, and since the Coleman's status a "parents" is based on a Maryland Court Order, Maryland law must be applied in determining their rights.*

*8. Consequently, the School District asserts that under Maryland law, once a child reaches the age of majority, or age eighteen, the Court Order giving the Guardians the right to act on behalf of the Student expired, and therefore, the Colemans lack standing as "parents" of the Student.*

*9. Additionally, I also agree with the School District that in the present case, Michael Coleman, even if he could produce an assignment of rights, is barred from asserting the Student's rights under IDEA.*

*10. Therefore, the School District's Motion to Dismiss the Amended Complaint for Lack of Standing is GRANTED.*

*11. Accordingly, the complaint captioned **Rodney Jones v. Pottstown SD, 10064/08-09 AS is DISMISSED**.*

34. The Hearing Officer committed plain error in her interpretation of who may qualify as a "parent" under the IDEA.

35. The Hearing Officer's Conclusion that Plaintiffs Lacked Standing was Clear Error.

36. Pursuant to §300.30,

*"(a) Parent means—*

*(1) A **biological or adoptive parent** of a child;*

*(2) A **foster parent**, unless State law, regulations, or contractual obligations with a State or local entity prohibit a foster parent from acting as a parent;*

*(3) A **guardian** generally authorized to act as the child's parent, or authorized to make educational decisions for the child (but not the State if the child is a ward of the State);*

*(4) An individual acting in the place of a biological or adoptive parent (including a **grandparent, stepparent, or other relative**) with whom the child lives, or an individual who is*

*legally responsible for the child's welfare; or*

*(5) A surrogate parent who has been appointed in accordance with ADD §300.519 or section 639(a) (5) of the Act.*

*(b)*

*(1) Except as provided in paragraph (b)(2) of this section, the biological or adoptive parent, when attempting to act as the parent under this part and when more than one party is qualified under paragraph (a) of this section to act as a parent, must be presumed to be the parent for purposes of this section unless the biological or adoptive parent does not have legal authority to make educational decisions for the child.*

*(2) If a judicial decree or order identifies a specific person or persons under paragraphs (a)(1) through (4) of this section to act as the "parent" of a child or to make educational decisions on behalf of a child, then such person or persons* shall *be determined to be the "parent" for purposes of this section. (Authority: 20 U. S. C.1401(23))."*

37. The Individuals with Disabilities Education Act (IDEA) defines the term "parent" as "a natural, adoptive, or foster parent of a child." 20 U.S.C. § 1402(23). Thus, the inclusion of parties other than biological parents is an express provision. *See, Id.*

38. The procedural safeguards afforded parents under IDEA include "an opportunity for *any party* to present a complaint" seeking a due process hearing, 20 U.S.C. § 1415(b)(6), and, in a two-tier system of dispute resolution, guarantees that after a due process hearing, "*any party* involved in such hearing may appeal such decision." 20 U.S.C. § 1415(i)(1)(A) (*emphasis added*).

39. The hearing Officer incorrectly concluded that a biological parent must be stripped of her parental rights in order for another caregiver to qualify as a "parent" under the IDEA.

40. Further, any presumption that R.J.'s biological mother (presumably residing someplace in Maryland) has exclusive authority to act on behalf of R.J., or could have opposed

that the Colemans acted on behalf of R.J. to meet his educational needs, is negated by the judicial order granting custody of R. J. to the Colemans.

41. Indeed, the School District itself has always recognized said custody Order by communicating with the Colemans regarding R.J.'s education. Jean and David Coleman therefore qualified to make educational decisions on behalf of R.J. 34 CFR §300.30(b)(2).

42. By extension, Michael Coleman also qualifies as R.J.'s "parent"; not only is he part of the nuclear family that accepted custody of R.J., but the School District's own records overwhelmingly establish that Michael Coleman was the District's principal adult contact with regard to R.J.'s education. Thus, the School District's recent position that Michael Coleman is a third party is unsustainable.

43. Moreover, the Hearing Officer committed clear error in agreeing with the School District that R.J. had reached the age of majority at 18 for purposes of the IDEA pursuant to Maryland law. The age of majority is reached in Pennsylvania when the individual reaches 21 years of age, and PA does not transfer rights at the age of majority to any student, and rights under IDEA are not transferred to students with disabilities in any event. IDEA-B July 1, 2004.

44. This controversy occurred in Pennsylvania. Further, Plaintiffs reside in Pennsylvania, and Defendants and operate in Pennsylvania.

45. The Hearing Officer also erred in holding that R.J. reached the age of majority at 18 for purposes of the IDEA, based on the fact that the custody Order was issued in Maryland. For purposes of IDEA, majority is reached in Pennsylvania at 21 years of age. IDEA-B July 1,

2004.  The Hearing officer cited no authority to the contrary.  Therefore, the Hearing Officer committed clear error.

46.     Even if, *arguendo*, majority in PA was reached at 18 and rights were transferable to students under the IDEA, then would R.J. certainly have had standing to file in his own behalf, as he was listed as a claimant in the Amended Complaint.

47.     The Hearing Officer also erroneously concluded that R.J. could not have assigned his rights for another to represent him (See, 20 U.S.C. Sec. 1415(m)), even with if a written "Assignment" form had been available.  The Hearing Officer provided no authority for this conclusion.

## VI. CAUSES OF ACTION

### *COUNT I: INDIVIDUALS WITH DISABILITIES EDUCATION ACT CLAIM*

Plaintiffs incorporate the allegations of paragraphs 1 though 47 as if fully set forth herein.

48. Under Part B of the IDEA, R.J., as a student with disabilities is entitled to supplementary supports and special education that ensure her an appropriate education. **20 U.S.C. § 1413.**

49. R.J. has not received the supplementary aids and services that he requires to receive an appropriate education consistent with the requirements of the IDEA.

50. Defendants knew or should have known that R.J. was not being provided with an appropriate education program but failed to comply with the requirements of the Act.

51. Defendants' failure to apply the policies and procedures set forth in the IDEA caused R.J. to be denied the opportunity to receive an education in an appropriate setting consistent with his needs, entitling R.J. to receive compensatory education.

52. Defendants' failure to apply the policies and procedures set forth in the IDEA caused R.J. to incur significant expense for private services from Lindamood Bell, entitling Plaintiffs to tuition reimbursement.

53. Courts are authorized to award attorney fees to the prevailing party in an action under the Act. **20 U.S.C. § 1415(i)(3)(B).**

### *Count II:   The Rehabilitation Act*

54. Plaintiffs incorporate the allegations of paragraphs 1 though 53 as if fully set forth herein.

55. The Rehabilitation Act prohibits discrimination of the basis of disability in programs and activities that receive federal financial assistance. 29 U.S.C. § 794.

56. Under the Act's education regulations, a "qualified handicapped person" is:

> With respect to public preschool, elementary, secondary, or adult educational services, a handicapped person (i) of an age during which nonhandicapped persons are provided such services, (ii) of any age during which it is mandatory under state law to provide such services to handicapped persons, or (iii) to whom a state is required to provide a free appropriate public education under section 612 of the Education of the Handicapped Act.

34 C.F.R. § 104.3(k)(2).

57. The Rehabilitation Act requires Plaintiffs to exhaust their administrative remedies as provided under the IDEA.  Plaintiffs pursued their administrative remedies, but their Amended Complaint was dismissed by the Hearing Officer without a hearing.  Plaintiffs can now seek due process through a court of competent jurisdiction.

58. Defendants' failure to provide R.J. an appropriate education is discrimination within the meaning of the Rehabilitation Act.

## *COUNT III: ADA CLAIMS*

59.     Plaintiffs incorporate the allegations of paragraphs 1 through 58 as if fully set forth herein.

60.     Defendants, acting under color of law, intentionally, deliberately and knowingly deprived R.J. of rights protected by federal law and secured by 42 U.S.C. § 12131 et.seq.

61.     Defendants authorized and carried out policies and practices that deprived R.J. of rights procured under the Constitution and federal law.

# REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this court:

1. Order defendant to reimburse Plaintiff for educational costs for the 2008-2009 school year.

2. Order compensatory education as warranted by the School District's failure to provide FAPE.

3. In the alternate, REMAND this case to the Office of Dispute Resolution for additional proceedings and a fair hearing on the substantive issues in Plaintiff's claims.

4. Award Plaintiffs their reasonable attorney's fees and costs.

5. Order such other relief as this Court deems appropriate.


Respectfully Submitted,


_s/_____._
Giovanni O. Campbell, ID No. 72236
1080 N. Delaware Ave., Ste. 404
Philadelphia, PA 19125
215-427-1400

Date: September 15, 2009          Counsels for the Plaintiffs